UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

TRAYON ROBINSON,

    Plaintiff,

        v.

SECURITAS SERVICES, INC.,

    Defendant.

Civil Action No. 11-451 (JEB)

**MEMORANDUM OPINION**

Plaintiff Trayon Robinson was employed as a security guard by Defendant Securitas Services, Inc. After being terminated in October 2010, she filed this suit asserting causes of action for wrongful termination, breach of contract, and defamation. In now moving to dismiss the Complaint, Defendant correctly argues that Plaintiff cannot invoke the public-policy exception to the doctrine that bars at-will employees from suing for wrongful discharge. As her other claims are similarly infirm, the Court will grant Defendant's Motion.

**I. Background**

According to Plaintiff's Amended Complaint, which must be presumed true for purposes of this Motion, she worked for Securitas as a security guard assigned to the District of Columbia Public Schools. Compl. at 1-2. At some point during her employment, she "complained to management about the lack of proper training she received, the absence of defensive equipment, [the] shortage of personnel," and other issues. Id. at 3. On Oct. 7, 2010, while assigned to Ballou High School, she was involved in a struggle while apprehending a student the Metropolitan Police Department was seeking to arrest. Id. at 3-4. During the struggle, the MPD officer was injured, and Plaintiff was held responsible. Id. at 4. Securitas accused her of

1

violating its training and policies and, consequently, terminated her on Oct. 14. She claims that any failures on her part may be ascribed to the lack of training that Defendant provided her. Id. at 5.

She filed this suit in the D.C. Superior Court on Jan. 11, 2011, from where it was subsequently removed to this Court. Following Plaintiff's filing of an Amended Complaint, Defendant moved to dismiss the case or, in the alternative, for summary judgment on Count II. In dismissing the case, the Court need not convert the Motion into one for summary judgment under Fed. R. Civ. P. 56.[1]

**II.    Legal Standard**

Rule 12(b)(6) provides for the dismissal of an action where a complaint fails "to state a claim upon which relief can be granted." When the sufficiency of a complaint is challenged under Rule 12(b)(6), the factual allegations presented in it must be presumed true and should be liberally construed in plaintiff's favor. Leatherman v. Tarrant Cty. Narcotics & Coordination Unit, 507 U.S. 163, 164 (1993). The notice pleading rules are "not meant to impose a great burden on a plaintiff," Dura Pharm., Inc. v. Broudo, 544 U.S. 336, 347 (2005), and he or she must thus be given every favorable inference that may be drawn from the allegations of fact. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 584 (2007). Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion, Twombly, 550 U.S. at 555, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (internal quotation omitted). Plaintiff must put forth "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Though a plaintiff

---

[1] In deciding this Motion, the Court has considered the Amended Complaint, Defendant's Motion to Dismiss, Plaintiff's Opposition, and Defendant's Reply.

survive a 12(b)(6) motion even if "recovery is very remote and unlikely," Twombly, 550 U.S. at 555 (citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)), the facts alleged in the complaint "must be enough to raise a right to relief above the speculative level." Id. at 555.

### III. Analysis

#### A. Wrongful Termination

Plaintiff's central claim here is that she was wrongfully terminated from her employment with Securitas. At no point does Plaintiff assert that she was anything other than an at-will employee, and her Opposition appears to concede that was her status. See Opp. at 2. As Defendant rightly explains, however, being an at-will employee does not necessarily doom Plaintiff's case. See Mot. at 4. The general law "in the District of Columbia [is] that an employer may discharge an at-will employee at any time and for any reason, or for no reason at all." Adams v. George W. Cochran & Co., Inc., 597 A.2d 28, 30 (D.C. 1991) (citations omitted). In Adams, the D.C. Court of Appeals held that "there is a very narrow exception to the at-will doctrine under which a discharged at-will employee may sue his or her former employer for wrongful discharge when the sole reason for the discharge is the employee's refusal to violate the law, as expressed in a statute or municipal regulation." Id. at 34.

The DCCA then expanded this exception six years later in its *en banc* decision in Carl v. Children's Hospital, 702 A.2d 159 (D.C. 1997). The plaintiff in Carl was a nurse who was terminated after she testified in the City Council against the hospital's interests and also as an expert witness for plaintiffs in malpractice cases. Id. at 160. The majority of the DCCA – as constituted by those joining Judge Terry's concurrence and Judge Steadman's dissent – held that Adams's exception was not the only possible one, but that "the recognition of any such [future public-policy] exception must be firmly anchored either in the Constitution or in a statute or

3

regulation which clearly reflects the particular 'public policy' being relied upon." Id. at 162 (Terry, J., concurring). In addition, "[t]his court should consider seriously only those arguments that reflect a clear mandate of public policy- *i.e.,* those that make a clear showing, based on some identifiable policy that has been 'officially declared' in a statute or municipal regulation, or in the Constitution, that a new exception is needed. Furthermore, there must be a close fit between the policy thus declared and the conduct at issue in the allegedly wrongful termination." Id. at 164 (Terry, J., concurring) (footnotes omitted).

Plaintiff argues that "she spoke out on an issue of public policy and was terminated for doing so." Opp. at 3. This, she believes, places her within Carl's umbrella. Despite Carl's expansion of the public-policy exception, Plaintiff may not benefit from its protection for two independent reasons. First, there is no causal link between any allegedly protected activity and her termination. Second, even if such link existed, Plaintiff has not articulated the particular public policy that would apply here.

### 1. *No Causal Link*

A close examination of Plaintiff's actual allegations reveals that she was not terminated for any protected activity. She initially asserts that she "complained to management about the lack of proper training she received, the absence of defensive equipment, [the] shortage of personnel, and how the lack of communications equipment necessary for her to perform her security officer functions impacted safety at the school to which she was assigned." Compl. at 3. She "also complained to management about the failure [of Defendant] to pay her a full salary for a full week[']s work." Id. She then describes the incident at Ballou and that "the specific allegations . . . levied [against her] . . . [were that she] did not conduct the wand check in accordance with her training . . .[that] she only checked the front of the student's body . . . [and

4

that she was thus] charged with a direct violation of [Defendant's] training and policies." Id. at 4 (internal quotations omitted). She was then terminated the next day. Id.

She alleges that this was unfair because she had not been provided training on the use of the wand and because Defendant "blamed [her] for the injuries to the [MPD] [o]fficer and for the person of interest entering the facility." Id. at 5. Ultimately, she alleges that she "spoke out to inform her superiors of conditions that precluded her from providing a safe secure environment at the school to which she was assigned and in support of the public policy decision to provide physical security officers in the school system." Id. at 6. In addition, she states that she was terminated "after she put herself at risk providing security at the DCP[S] facility despite lacking the training and equipment necessary to facilitate a secure environment." Id.

The language of her Complaint demonstrates that she was not terminated for raising concerns about company improprieties; on the contrary, she lost her job because of the Ballou incident. She avers that this was undeserved because, if she had been better trained, she would not have performed inappropriately and would still be employed at Securitas. It may well be true that Plaintiff would have performed differently with training and would thus have retained her position. Yet, to fall within the public-policy exception, she must have been terminated for acting in a protected manner. Because she has not made such allegations, her claim cannot survive.

### 2. *No Public Policy*

Even if a court could find that she has sufficiently pled a connection between her termination and protected activity, she could still not prevail here because she points to no actual public policy. She alleges in a very general way that "[s]tudent safety and an environment where learning may take place free from threats or intimidation is an issue of public concern." Compl.

5

at 3. In addition, "[t]he decision to hire a full time security force . . . to protect children attending DCPS was a decision made in furtherance of that public policy." Id. Finally, she notes the "public policy decision to provide physical security officers in the school system." Id. at 6. Such allegations are insufficiently vague.

She never actually cites in her Complaint to any statute or municipal regulation that she claims embodies or articulates the public policy she believes is involved here; instead, she offers only an amorphous reference to student safety generally. In fact, even in her Opposition, once Defendant raised the issue, she cites only the contract between the city and Securitas and the legislation approving it. See Reply at 3 & Exhs. 2-4. This does not suffice. See Davis v. Gables Residential/H.G. Smithy, 525 F. Supp. 2d 87, 102 (D.D.C. 2007) ("Plaintiff's wrongful discharge claim is deficient, however, because it does not identify any public policy purportedly violated by his termination."); Chisholm v. District of Columbia, 666 F. Supp. 2d 96, 117 (D.D.C. 2009) ("The plaintiff does not point to any fundamental public policy expressed in the constitution or the statutes of the District of Columbia that support her position, but rather points to the general policy of the Courts' Comprehensive Policies . . . ."); Martin v. American Univ., 1999 WL 1125168, at *2 (D.C. Cir. 1999) ("it is not clear that the code provisions [namely, 'the District's codes that regulate nurses'] on which Dr. Martin relies articulate the type of public policy necessary to trigger the public policy exception") (citation omitted); Lurie v. Mid-Atlantic Permanente Medical Group, P.C., 729 F. Supp. 2d 304, 326 (D.D.C. 2010) ("Even if one accepts plaintiff's account of himself as a whistleblower punished for his good deeds, plaintiff is unable to identify an appropriate public policy on which to base his claim."); cf. Liberatore v. Melville Corp., 168 F.3d 1326, 1331 (D.C. Cir. 1999) ("In his brief, Liberatore cites both federal and District of Columbia law proscribing the improper storage of drugs.") Freas v. Archer Services,

Inc., 716 A.2d 998 (D.C. 1998) (permitting wrongful-termination case to proceed where employee was terminated after suing employer for violating statute that prohibits deductions from employee's paycheck for workers' compensation insurance premiums, and complaint cited particular statute that employer's behavior violated).

Finally, this Court is not prepared to hold that merely complaining to one's supervisors about workplace conditions that affect an employee's ability to do her job automatically triggers the public-policy exception, particularly where there is nothing unlawful occurring. Cf. Washington v. Guest Services, Inc., 718 A.2d 1071, 1080 (D.C. 1998) (case permitted to proceed where "Ms. Washington has alleged, under oath, that she was discharged for attempting to persuade her fellow worker (and, ultimately, her employer) not to violate this officially declared public policy ['proscribing, in the interest of public health, the preparation, service or sale of adulterated or contaminated food'] and for protesting an alleged unsafe and unlawful practice.").

As Plaintiff's claim for wrongful termination does not fit within the coverage of the public-policy exception, it cannot move forward.

B. Breach of Contract

In Count II, Plaintiff alleges that "Securitas (1) breached the terms of her employment contract; (2) barred her from accomplishing her assigned duties; (3) failed to properly equip her; (4) and did so [in] retaliation for her complaining about her workplace conditions . . . ." Compl. at 6. When Defendant moved to dismiss this count, Plaintiff never responded to any of its arguments; as a result, the Court will deem this count conceded. See Lewis v. District of Columbia, 2011 WL 321711, at *1 (D.C. Cir. 2011) ("'It is well understood in this Circuit that when a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as

conceded.'") (quoting Hopkins v. Women's Div., General Bd. Of Global Ministries, 284 F. Supp. 2d 15, 25 (D.D.C. 2003)).

Perhaps Plaintiff never responded because she knew she had little argument on this count. For example, she never alleges what the terms of her employment contract were that Defendant allegedly breached. Indeed, the only conceivable breach could have been her termination. But, as an at-will employee, she had no contractual right to employment at Securitas, and her failure on count I would require dismissal of this one as well.

Given her concession, the Court will grant Defendant's Motion on this count.[2]

### C. Defamation

Plaintiff similarly concedes her inability to proceed on this count by not offering any arguments whatsoever in her Opposition. This, too, makes sense inasmuch as her Complaint is clearly deficient in its defamation averments. Plaintiff alleges only that Defendant "knowingly published information about Officer Robinson that it knew to be false in order to cover up its improper termination of her employment." Compl. at 7. Given these meager allegations, the Court has no idea what was said, when, in what circumstances, and to whom. Under the law, "[a]ll averments of defamation must be [pled] with particularity." Wiggins v. District Cablevision, Inc., 853 F. Supp. 484, 494 (D.D.C. 1994) (citation omitted). Indeed, a "plaintiff should plead the time, place, content, speaker, and listener of the alleged defamatory matter." Id. (citation omitted).

---

[2] Plaintiff makes two stray references in her Complaint to 42 U.S.C. § 1981, but never mentions it again or asserts it as a cause of action. See Compl. at 1, 5. The Court does not know if she wished to make a claim under that statute, which prohibits racial discrimination in "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." If she had sought to do so, her Complaint fails to make any allegations concerning discrimination or even to mention her own race. Therefore, to the extent she is bringing a § 1981 claim, it, too, must be dismissed.

8

Once again, given Plaintiff's concession on this count, the Court will rule in Defendant's favor.

## IV. Conclusion

Because Plaintiff cannot survive this Motion, an Order issued this day will dismiss the case and enter judgment in favor of Defendant.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date: October 18, 2011